IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. _____

GERALYNN ZITSCH,

    Plaintiff,

v.

LOCKHEED MARTIN CORPORATION,

    Defendant,

_____|

## COMPLAINT

COMES NOW, Plaintiff, GERALYNN ZITSCH ("ZITSCH") files this Complaint and sues Defendant, LOCKHEED MARTIN CORPORATION ("LMC") for violation of Age Discrimination in Employment Act of 1967, 29 USC § 621, et seq. ("ADEA"), Title VII of the Civil Rights Act, 42 USC §2000, et seq. ("Title VII"), and the Florida Civil Rights Act of 1992, Fla. Stat. § 760.01, et seq. ("FCRA") and, in support, she alleges as follows:

### JURISDICTION & VENUE

1. This is an action brought to remedy unlawful employment practices by the Defendant pursuant to ADEA, Title VII, and FCRA.

2. This Court has federal question jurisdiction and supplementary jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332 and 1365.

3. ZITSCH is *sui juris* and is a resident of this District.

1

4. LMC is a foreign corporation and employed Plaintiff in this judicial district.

5. ZITSCH worked for LMC in Palm Beach County, Florida.

6. All actions relevant to this Complaint occurred in this District.

## CONDITIONS PRECEDENT

7. All conditions precedent have been satisfied or have been waived, including the dual-filing of Charges of Discrimination with the EEOC and FCHR, the elapse of 180 days and receipt of the EEOC's Right to Sue Letter.

## GENERAL ALLEGATIONS

8. LMC is an "employer" within the meaning of ADEA, Title VII, and FCRA.

9. ZITSCH worked for LMC for almost twenty (20) years.

10. At all relevant times, ZITSCH is a woman and 59 years of age.

11. Prior to her demotion/failure of LMC to promote or realign her to a managerial position, she held the position of Contracts Manager, where her essential job functions were to:

   a. Supervise all aspects of employee recruitment, selection, hiring, training, and evaluation;

   b. Manage the contracts for USW from start to finish;

   c. Ensure appropriate staffing levels for contracts;

   d. Advise and counsel project manager, direct reports and other subordinates;

  e. Assist other teams, including but not limited to business, accounting and engineering, with management of the USW contracts, primarily at the Palm Beach location;

  f. Work with vendors on behalf of LMC for the USW contacts; and

  g. Ensure the contracts and deliverables conformed to all legal requirements.

12. As a Contracts Manager, ZITSCH had at least 4 to 7 direct reports.

13. In sum, ZITSCH was the Contracts Manager for multiple sites, until the reorganizations occurred on or about May 18, 2021, leaving programs only in the Palm Beach and Marion County locations for her to manage or support—all without any increase in pay in light of these organizational changes and responsibilities.

14. Throughout her employment at LMC, ZITSCH consistently received "exceeded" and "significantly exceeded" reviews on her performance evaluations, representing the top tier of employees at LMC.

*Age Discrimination:*

15. To ZITSCH's great surprise (and that of her peers and direct reports), effective in mid-July 20, 2021, Jim Behe, in his 30's, took over the Franchise programs (similar to the Palm Beach programs). Then, effective August 2021, he took over the remaining programs located in Palm Beach, which were virtually all of ZITSCH's core duties.

16. Thereafter, ZITSCH was demoted to a non-managerial position of Senior Staff Contracts and her responsibilities were:

   a. Contract Lead on DCS;

   b. Continue to assist other programs, including but not limited to management of the USW contracts, primarily at the Palm Beach location;

   c. Continue working with vendors;

   d. Continue to ensure the contracts and deliverables conform to all legal requirements;

   e. Continue to provide oversight for all unclassified programs;

   f. Continue to provide the oversight for classified programs;

   g. Continue to serve as primary Contracts POC for Palm Beach leadership;

   h. Continue to represent the Contracts function at site-level meetings;

   i. Continue to mentor/coach junior employees on team; serve as a stakeholder for team members;

   j. Continue to address team workflow and coverage matters, such as tasking allocation and coordinating backfill arrangements;

   k. Continue to provide manager with weekly program/contract/site updates;

   l. Continue to coordinate data calls across site, etc.;

    m. Continue supporting future Palm Beach capture activities; and

    n. Continue to support future stretch/development assignments and other special projects across C6ISR (i.e., proposals, INARs, program reviews, etc.)

17. ZITSCH's duties were virtually the same as the Contracts Manager position she previously held, with a few notable exceptions—namely, she no longer would have any direct reports and would no longer be a "manager".

18. Notably, neither Jim Behe or Madalyn Murtha, who continued in the other managerial roles had to reapply or compete for their current managerial positions under LMC's reorganization/realignment of programs.

19. Both Mr. Behe and Ms. Murtha are believed to be in their 30s; whereas ZITSCH was 59, at all relevant times.

20. Based upon information and belief, Mr. Behe and Ms. Murtha are less qualified that ZITSCH in terms of experience, qualifications, and education.

21. ZITSCH was qualified for both of the managerial positions filled by Mr. Behe and Ms. Murtha and another open managerial position, but was never offered an opportunity for them. This is despite the fact that she expressed interest in the remaining group of programs and even volunteered to relocate for that position to the Washington, D.C. area, where the Director she supported was based—though co-location was not

mandatory, since Ms. Murtha's Director was based out of New York, while Ms. Murtha was based in Washington, DC.

22. In response, Human Resources and her immediate supervisor told ZITSCH that she would need to "compete" for the open requisition of the remaining programs under USW that Mr. Behe and Ms. Murtha previously managed.

23. Further, her application for that position would be futile in light of the dissuading comment that it was "not an option" for ZITSCH.

24. When ZITSCH inquired why she was singled out in this manner, ZITSCH was informed that Ms. Murtha was not required to compete for her position due to the fact that she had previously supported some of her Director's programs.

25. In contrast, Mr. Behe had never supported any of his new Director's programs prior to the realignment; yet he also was not required to compete for his position.

26. During that same meeting, ZITSCH's supervisor and Human Resources reassured her that they harbored no concerns about her performance.

27. Following the realignment, Mr. Behe assumed virtually all of her core duties and ZITSCH was relegated to assume her prior held position of Contracts Negotiator – Senior Staff to be effective in August of 2021 upon the retirement of one of her direct reports who was managing the program she used to support as a Contracts Negotiator-Senior Staff.

28. As such, ZITSCH was no longer the direct supervisor of any employees and was demoted from a managerial position.

*<u>Gender Discrimination:</u>*

29. Throughout her tenure at LMC, ZITSCH consistently received "exceeded" and "significantly exceeded" reviews on her performance evaluations, representing the top tier of employees at LMC.

30. Her superior performance was, in part, what led to her promotion from Contracts Negotiator – Senior Staff to Contracts Manager in January 2020.

31. At that time, ZITSCH transitioned from supporting a single program to managing the contracts for no less than four different divisions within the Undersea Warfare ("USW") system, all of which encompassed additional programs of their own.

32. This reorganization essentially consolidated three Contracts Manager positions into one.

33. In that role, ZITSCH was expected to supervise seven employees who were supporting various programs within her assigned divisions. This included the Fleet Ballistic Missile Programs-Trident, Manned and Unmanned Submersibles, Akron Ohio Transition and the Must Win Trident Proposal.  Each of these areas were previously assigned a manager for which now Ms. Zitsch would manage all.

34. Despite the significant increase in both her responsibilities and workload, ZITSCH was not awarded any increase in pay for this promotion.

35. Though ZITSCH has served in the role of Contract Manager duties, she was not read into a number of programs (meaning, she was not granted access to classified information) unlike the manager from whom she took over these job duties.

36. Notably, ZITSCH's predecessor—a man of comparable age and experience with the same requisite clearances—was "read in" to those same programs without issue.

37. LMC finally "read" ZITSCH into one program in early Fall of 2020 but not the other five programs.

38. During the course of the COVID-19 pandemic, ZITSCH's presence in the office was occasionally required, particularly when she needed to address personnel issues, proposal submissions or contract amendments; yet she was systematically denied access to the building by the site general manager.

39. Technically, according to LMC's COVID-19 categorization policy, ZITSCH was authorized to go on site one to two days per week.

40. In spite of this authorization, the site general manager required that ZITSCH obtain approval from him every time she sought to be on site.

41. Most of the colleagues in the same COVID-19 category ("Category B"), who are predominantly male, were not required to seek authorization for each individual entry; rather, they had a blanket authorization to access the building.  This was demeaning; especially, since ZITSCH was a manager with on-site employees.

42. Another instance of gender discrimination against ZITSCH was that LMC did not offer a separation/severance package while ZITSCH's male counterparts who were demoted, refused the demotion and then received packages.

43. Upon information and belief, a number of men at ZITSCH's level or comparable to her level were offered less favorable positions—like her, declined those positions, and were then offered a separation package.

44. Two of these male counterparts took the package, upon information and belief.

45. LMC has engaged in a pattern and practice of offering male employees separation pay and packages, while women (such as ZITSCH) were not afforded the same benefits.

*Motivating Factor:*

46. The adverse job actions taken by LMC against ZITSCH were motivated by her protected categories of age and gender or in retaliation for her complaints even if other alleged reasons factored into LMC's decision to treat her adversely.

## ATTORNEY'S FEES

47. As a result of LMC's unjust, unlawful, and wrongful treatment of her, ZITSCH has retained the undersigned law firm and they are entitled to reasonable attorneys' fees and costs.

## COUNT I: AGE DISCRIMINATION IN VIOLATION OF ADEA

48. ZITSCH re-adopts, incorporates by reference, and re-alleges Paragraphs 1 to 47, as though fully set forth herein.

49. At all relevant times, ZITSCH is a member of a protected category, since she was 59 years old at all relevant times.

50. ZITSCH indicated her desire for a managerial position for which she was fully qualified.

51. ZITSCH even offered to uproot herself from South Florida and move to Washington, D.C. area to support the Director and the realigned programs.

52. LMC offered the position to two employees, with less experience than ZITSCH who were, upon information and belief, in their 30's or at any rate, significantly younger than ZITSCH.

53. Additionally, none of these comparator employees had to compete or apply for the managerial position.

54. ZITSCH was discouraged by Human Resources to apply for the managerial position and told that it was not an option for her to remain in the programs and, if she desired to stay, she would need to compete for the position.

55. As a direct and proximate result of the intentional violations of the ADEA by LMC, ZITSCH has been injured.

56. LMC's discriminatory actions against ZITSCH in its failure to realign her to one of the three manager's positions and, ultimately, demote her, were in willful violation of the ADEA.

WHEREFORE, as to Count I, GERALYNN ZITSCH respectfully requests that the Court award her damages including but not limited to injunctive relief, back pay, front pay or reinstatement, liquidated damages, interest, attorneys' fees pursuant to 29 USC § 626, costs and any other such relief this Court deems just and equitable.

### COUNT II: AGE DISCRIMINATION IN VIOLATION OF FCRA

57. ZITSCH re-adopts, incorporates by reference, and re-alleges Paragraphs 1 to 47, as though fully set forth herein.

58. At all relevant times, ZITSCH is a member of a protected category, since she was 59 years old at all relevant times.

59. ZITSCH indicated her desire for a managerial position for which she was fully qualified.

60. ZITSCH even offered to uproot herself from South Florida and move to Washington, D.C. area for the third manager's position.

61. LMC offered the position to two employees, with less experience than ZITSCH who were, upon information and belief, in their 30's or at any rate, significantly younger than ZITSCH.

62. Additionally, none of these comparator employees had to compete or apply for the managerial position.

63. ZITSCH was discouraged by Human Resources to apply for the managerial position and told that it was not an option for her to remain in the programs and that she would need to compete for the third manager's position.

64. As a direct and proximate result of the intentional violations of the FCRA by LMC, ZITSCH has been injured.

65. LMC's discriminatory actions against ZITSCH in its failure to promote her and, ultimately, demote her, were in willful violation of the FCRA.

WHEREFORE, as to Count II, GERALYNN ZITSCH respectfully requests that the Court award her damages including but not limited to injunctive relief, back pay, front pay or reinstatement, compensatory damages for the anguish and pain and suffering she experienced, punitive damages, interest, attorneys' fees pursuant to Fla. Stat. § 760.11, costs and any other such relief this Court deems just and equitable.

**COUNT III: GENDER DISCRIMINATION IN VIOLATION OF TITLE VII**

66. ZITSCH re-adopts, incorporates by reference, and re-alleges Paragraphs 1 to 47, as though fully set forth herein.

67. At all relevant times, ZITSCH is a member of a protected category, since she is a woman.

68. ZITSCH did not receive the same or equal consideration as her male counterparts in that LMC refused or failed to offer her a severance package.

69. Further, ZITSCH did not receive the same security access as other male employees at LMC.

70. These actions by LMC in failing or refusing to provide ZITSCH with the same or substantially similar job benefits was discriminatory and motivated by ZITSCH's gender.

71. As a direct and proximate result of the intentional violations of Title VII by LMC, ZITSCH has been injured.

72. LMC's discriminatory actions against ZITSCH were in willful violation of Title VII.

WHEREFORE, as to Count III, GERALYNN ZITSCH respectfully requests that the Court award her damages including but not limited to injunctive relief, back pay, front pay or reinstatement, compensatory damages for the anguish and pain and suffering she experienced, punitive damages, interest, attorneys' fees pursuant to 42 USC § 1988, costs and any other such relief this Court deems just and equitable.

## **COUNT IV: GENDER DISCRIMINATION IN VIOLATION OF FCRA**

73. ZITSCH re-adopts, incorporates by reference, and re-alleges Paragraphs 1 to 47, as though fully set forth herein.

74. At all relevant times, ZITSCH is a member of a protected category, since she is a woman.

75. ZITSCH did not receive the same or equal consideration as her male counterparts in that LMC refused or failed to offer her a severance package.

76. Further, ZITSCH did not receive the same security access as other male employees at LMC.

77. These actions by LMC in failing or refusing to provide ZITSCH with the same or substantially similar job benefits was discriminatory and motivated by ZITSCH's gender.

78. As a direct and proximate result of the intentional violations of the FCRA by LMC, ZITSCH has been injured.

79. LMC's discriminatory actions against ZITSCH were in willful violation of the FCRA.

WHEREFORE, as to Count IV, GERALYNN ZITSCH respectfully requests that the Court award her damages including but not limited to injunctive relief, back pay, front pay or reinstatement, compensatory damages for the anguish and pain and suffering she

experienced, punitive damages, interest, attorneys' fees pursuant to Fla. Stat. § 760.11, costs and any other such relief this Court deems just and equitable.

## JURY TRIAL DEMAND

Plaintiff, GERALYNN ZITSCH, demands a trial by jury on all issues so triable.

Dated:  April 26, 2022.                        Respectfully submitted,

                                                 By:     /s/ Gina Cadogan
                                                       GINA MARIE CADOGAN
                                                       Fla. Bar No. 177350
                                                       Cadogan Law
                                                       300 S. Pine Island Road, Suite 107
                                                       Plantation, FL 33324
                                                       Telephone: 954.606.5891
                                                       Facsimile: 877.464.7316
                                                       gina@cadoganlaw.com
                                                       kathy@cadoganlaw.com